John Soumilas, I.D. No. JS 0034
James A. Francis, I.D. No. JAF 6355
Lauren KW Brennan, I.D. No. LKB 6208
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
T: (215) 735-8600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **ANGELA FULLER,** | : | |
| **on behalf of herself and all others** | : | |
| **similarly situated,** | : | **Civil Action No. 15-** |
| | : | |
| **Plaintiff,** | : | |
| | : | **CLASS ACTION COMPLAINT** |
| **v.** | : | |
| | : | |
| **AVIS BUDGET CAR RENTAL, LLC, and** | : | **JURY TRIAL DEMANDED** |
| **AVIS BUDGET GROUP, INC.,** | : | |
| | : | |
| **Defendants.** | : | |

On behalf of herself and all others similarly situated, Plaintiff Angela Fuller ("Plaintiff" or "Ms. Fuller"), by and through her attorneys, The Adkins Firm, P.C., Francis & Mailman, P.C., and Robert S. Sola, P.C., respectfully alleges as follows:

**NATURE OF THE ACTION**

1.     This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA") brought on behalf of applicants for employment with Defendants Avis Budget Car Rental, LLC and Avis Budget Group, Inc. (collectively "ABG").  Plaintiff contends that Defendants systematically violate section 1681b(b)(3) of the FCRA by using consumer reports to make adverse employment decisions without, beforehand, providing the person who is the subject of the report sufficient and timely notification and a copy of the report and a summary of

rights under the FCRA, leaving the employee or applicant without any time, much less sufficient time, to dispute the report.

2.       Plaintiff also contends that Defendants systematically violate section 1681b(b)(2) of the FCRA by requiring job applicants to sign a standardized background check application form which, among other things, upon information and belief, requires job applicants to expressly or impliedly waive certain rights, and includes other limitations and extraneous language that is not permitted by the FCRA's stand-alone disclosure form requirement.

3.       The FCRA is a remedial consumer protection statute which regulates "consumer reports," including employment background reports such as the ones used in this case.  Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of consumer reports," such as ABG.  This action involves Defendants' systematic violations of those important rules.

4.       Plaintiff was denied employment as a rental sales associate at ABG in July 2013 based upon a standardized background consumer report conducted by Sterling Infosystems, Inc. ("Sterling"), pursuant to an agreement between Sterling and ABG whereby Sterling performs background screening on Defendants' candidates for hire or promotion.

5.       In violation of the FCRA, Defendants required Plaintiff to sign a background check application form which did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i), but upon information and belief, instead unlawfully attempted to obtain future protection for Defendants for any unlawful actions, and provided other limitations on consumer protections and other extraneous language.

6.     In further violation of the FCRA, Defendants willfully and negligently failed to comply with the FCRA's mandatory pre-adverse action notification requirement, and failed to provide to Plaintiff a copy of the incomplete and misleading background report they obtained from Sterling, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3).  Every year, individuals who have applied to ABG for employment have been similarly aggrieved by the same violation of 15 U.S.C. § 1681b(b)(3).

7.     Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff seeks monetary relief for herself and a class of similarly situated employees and employment applicants who were required to sign Defendants' background check application form that violated FCRA section 1681b(b)(2).

8.     Pursuant to 15 U.S.C. §§ 1681n and 1681o, Plaintiff also seeks monetary relief for herself and a class of similarly situated employees and employment applicants for Defendants' failure to comply with FCRA section 1681b(b)(3)'s pre-adverse action notification requirements.

## PARTIES

9.     Plaintiff is an adult individual residing in Pensacola, Florida.

10.    Defendants regularly conduct business globally and in the State of New Jersey, and have a principal place of business and corporate headquarters at 6 Sylvan Way, Parsippany, NJ 07054.  ABG markets itself as "a leading global provider of vehicle rental services, both through its Avis and Budget brands, which have more than 10,000 rental locations in approximately 175 countries around the world, and through its Zipcar brand, which is the world's leading car sharing network, with more than 900,000 members."  http://www. avisbudgetgroup.com/.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. § 1681p in that all claims brought herein arise under the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.*

12.     Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b) because Defendants "reside" in this District as defined in 28 U.S.C. § 1391(c).

## STATEMENT OF FACTS

### Background:   Defendants' Use of Sterling's Background Screening Reports

13.     Sterling is among the largest of the nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers and employers.

14.     Sterling investigates and reviews public records and private databases and assembles and/or maintains consumer files which contain information concerning, among other things, the alleged criminal, credit and employment history of individuals.

15.     From its files, Sterling sells background consumer reports to potential employers (such as Defendant) wishing to screen applicants for employment.  According to its website, Sterling "is the world's largest company focused entirely on background checks." http://www.sterlingbackcheck.com/About /Company-Profile.aspx.

16.     Sterling offers its customers the possibility of using its screening service in a "pre-employment" hiring environment, to preliminarily screen applicants, or in a "post-employment" hiring environment, as the final stage in the hiring/promotion process.  In a "post-employment" environment, Sterling's customers use the service to screen consumers who were already selected for hire or promotion, subject to the results of a background check.

17.     ABG uses Sterling's screening services to conduct background checks on applicants for employment.  The background reports resulting from these services are delivered directly to ABG.

18.     Despite the well-known existence of mistakes in consumer reports and background checks, especially those prepared by Sterling, Defendants choose, but are not required, to screen their job applicants through background reports.

19.     Under the FCRA, any "person" using a consumer report, such as ABG, may not lawfully obtain any background consumer report on any prospective job applicant, or "consumer" as used in the FCRA, unless "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes."  15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis supplied).

20.     The purpose of the stand-alone disclosure is to inform the consumer job applicant that a background report will be procured about him or her, not to provide the employer an opportunity to obtain the prospective employee's signature on a form filled with confusing language and self-serving protections for the employer or waivers of the employee's rights.

21.     Upon information and belief, Sterling provides its customers with standard background check application forms, pre-adverse action letters, and adverse action letters to use during their background screening of employees and employee applicants.

22.     Indeed, a Sterling background check application form was found to form the basis for a violation of FCRA section 1681b(b)(2) in a recent decision in the Southern District of New York:

> Notwithstanding Defendants' arguments to the contrary, the Sterling Disclosure [used by the employer] does not appear to be a standalone disclosure. In addition to the disclosure and an authorization, which is permitted, the Sterling Disclosure includes, inter alia: information regarding time frames within which the applicant must challenge the accuracy of any report; an acknowledgement that "all employment decisions are based on legitimate non-discriminatory reasons"; the name, address and telephone of "the nearest unit of the consumer reporting agency designated to handle inquiries regarding the investigative consumer report" (interestingly, the form lists three separate units, not all of which could be the "nearest"); and all sorts of state-specific disclosures that had nothing to do with Plaintiff's potential employment in New York. All of those extraneous additions to the form stretched what should be a simple disclosure form to two full pages of eye-straining tiny typeface writing.

*Jones v. Halstead Management Co.*, ___ F. Supp. 3d ___, 2015 WL 366244, *5 (S.D.N.Y. Jan. 27, 2015). *See also Simons v. Aegis Communications Group, LLC*, No. 2:14-cv-04012 (W.D. Mo. Jan. 15, 2015) at Dkt. No. 32 (Order certifying Disclosure Class of "All applicants and/or employees of Aegis, during the Claims Period, from whom Aegis obtained written consent, using a Consumer Disclosure and Authorization Form, to conduct a background check…").

23.     According to the Merriam-Webster online dictionary, the word "solely" is defined as "without anything or anyone else involved;" and "to the exclusion of all else." *See* http://www.merriam-webster.com/dictionary/solely.   According to dictionary.com, "solely" means "exclusively or only." *See* http://dictionary.reference.com/browse/solely.  These dictionary definitions of the word "solely" leave no doubt that a document disclosing that an employer planned to obtain a consumer report does not "consist[] solely of the disclosure" when the document also contains many other clauses.

24.     Additionally, interpretations of the FCRA by the Federal Trade Commission ("FTC") from 1998 show that inclusion of waivers of liability in a background authorization or disclosure form violates the FCRA.  In response to company inquiries, the FTC issued two opinion letters addressing section 1681b(b)(2)'s "consists solely" language.  The first letter explicitly states

that "inclusion of ... a waiver [of one's FCRA rights] in a disclosure form will violate" section 1681b(b)(2) because the form will not "consist 'solely' of the disclosure."  Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998).

25.     The second opinion letter more broadly stated that the FCRA prohibits disclosure forms "encumbered by *any other information* ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure."  Letter from Clarke W. Brinckerhoff, Fed. Trade Comm'n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998) (emphasis added).

26.     In addition to providing background reports, Sterling provides to its employment screening customers an additional service which it calls, alternatively, "scoring" or "adjudication." Under this service Sterling scores an applicant eligible or ineligible for employment based upon an adjudication "matrix" that it develops with the customer.

27.     This scoring service is attractive to Sterling's customers such as ABG who are constantly hiring and promoting in very large volumes because it provides the customer with a remote, outsourced tool to make its employment decisions rapidly.

28.     Once Sterling scores an applicant as ineligible for employment on a background report (because that applicant purportedly has a criminal record, for example) that scoring removes an applicant from hiring consideration with ABG.

29.     Defendants will, in effect, adopt Sterling's scoring as their own, without any further process given to the employee or job applicant, and take adverse action based upon that scoring.

30.     As in Ms. Fuller's instance, ABG will move forward with the applications of other candidates, but not those applicants scored by Sterling as not meeting their hiring criteria.

31.     Any "person" using a consumer report, such as ABG, who intends to take any "adverse action" against a job applicant "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.   15 U.S.C. § 1681b(b)(3)(A); *see also Goode v. LexisNexis Risk & Info. Analytics Group, Inc.*, 848 F. Supp. 2d 532, 542 (E.D. Pa. 20120) (more than one business can be a user of a single background report; "Under the FCRA, 'person' means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. § 1681a(b).  Thus, defendants are persons and must comply with § 1681b(b)(3)(A).").

32.     There is longstanding regulatory guidance for employers making clear their obligations and the protections afforded to job applicants under the FCRA.  The Federal Trade Commission ("FTC") has long held that Section 604(b)(3)(a) [15 U.S.C. § 1681b(b)(3)(A)] "requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken.  Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.  Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete."  *See* Federal Trade Commission letter dated June 9, 1998 to A. Michael Rosen, Esq.

33.     A primary reason that Congress required that a person intending to take an adverse action based on information in a consumer report provide the report to the consumer before taking the adverse action is so the consumer has time to review the report and dispute information that

may be inaccurate, or discuss the report with the prospective employer before adverse action is taken. *See* Federal Trade Commission letter dated December 18, 1997 to Harold R. Hawkey, Esq. ("[T]he clear purpose of the provision to allow consumers to discuss reports with employers or otherwise respond before adverse action is taken.").

34.     Numerous courts interpreting the FCRA have found FTC opinion letters persuasive.  *See*, *e.g.*, *Owner-Operator Independent Drivers Ass'n, Inc. v. USIS Commercial*, 537 F.3d 1184, 1192 (10th Cir. 2008); *Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 468 (5th Cir. 2006).  *See also Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 n.5 (3d Cir. 2013) (affording some deference to Federal Communication Commission analysis and finding it persuasive in interpreting Telephone Consumer Protection Act).

35.     Consistent with that purpose, federal courts have held that the prospective employer must provide the report to the consumer "a sufficient amount of time before it takes adverse action so that the consumer may rectify any inaccuracies in the report."  *Williams v. Telespectrum, Inc.*, 2006 U.S. Dist. LEXIS 101162, at *18 (E.D. Va. Nov. 7, 2006); *Beverly v. Wal-Mart Stores, Inc.*, 2008 U.S. Dist. LEXIS 2266 (E.D. Va. Jan. 11, 2008) (quoting *Williams*).  In *Reardon v. Closetmaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. April 27, 2011), the court certified a class action for prospective employees who did not receive a copy of their consumer report at least five days before being notified that the employer might take adverse action.

36.     The reasons for the "pre-adverse action notice" requirement with regard to employment situations are to alert the consumer employee and/or job applicant that she is about to experience an adverse action, such as a rejection, based on a report's contents, and to provide her an opportunity to challenge the accuracy, completeness or relevancy of the information with the consumer reporting agency or the user *before* that job prospect or job is lost.

37.     Defendants typically do not provide job applicants with a copy of their consumer reports or a statement of their FCRA rights before they take adverse action against them based upon the information in such reports, despite being required to do so by section 1681b(b)(3)(A) of the FCRA.

38.     The FCRA statutory text, the FTC opinions and the cases cited constitute significant authority that existed during the time Defendants failed to comply with the pre-adverse action requirements of 15 U.S.C. § 1681b(b)(3)(A).

39.     As a result of Defendants' conduct, job applicants such as Plaintiff, suffer harm in the form of wage loss, loss of benefits, delay in employment and/or other adverse employment action.

**The Facts Pertaining to Class Representative Plaintiff Angela Fuller**

40.     In or around June 2013, Ms. Fuller wanted to move from Tennessee to Florida to be closer to her family.

41.     In or around June 2013, she researched available jobs, found a listing to work at ABG on www.indeed.com, and submitted an initial application for the job.

42.     On or about June 15, 2013, ABG emailed Ms. Fuller to confirm the next step in the hiring process for the Rental Sales Associate position in Pensacola, Florida is to complete an online assessment.

43.     Ms. Fuller completed the online assessment, and on or about June 21, 2013, ABG emailed her to confirm that she passed the online assessment and should call to schedule a phone interview for the position.  Ms. Fuller called ABG, completed the phone interview, and scheduled an in-person interview for the position to be held on July 3, 2013 in Pensacola.

44.     On or about June 27, 2013, ABG emailed Ms. Fuller confirming her in-person interview was scheduled for July 3, 2013 at 3:00 PM and directed her to print and bring another application with her to the interview.

45.     On or about July 2, 2013, Ms. Fuller drove from Tennessee to Pensacola, Florida for the interview.  She interviewed in person for the rental sales associate position on or about July 3, 2013 with an ABG training manager.  She was given to understand the position for which she was applying was a full-time position at $9.50 per hour, with bonuses and incentives.  The interview went well, so the training manager requested that she stay in Pensacola for an additional day or two in order to meet with the airport manager, Mike Townsend, on July 5, 2013.

46.     Ms. Fuller extended her visit and continued staying in a local hotel in order to meet with the airport manager.  On or about July 5, 2013, Ms. Fuller interviewed in person for the position with Mr. Townsend.

47.     The interview went well, and Mr. Townsend formally offered her the job.

48.     Ms. Fuller then went to Lab Corp to take a drug test required by Defendants before returning to ABG to execute the offer of employment.  On or about July 5, 2013, Mr. Townsend and Ms. Fuller both signed it, confirming a July 15, 2013 start date and that if ABG "do[es] not receive satisfactory background checks back prior to your tentative start date, we will contact you." A true and correct copy of the July 5th offer of employment is attached hereto as Exhibit A.

49.     ABG required that Ms. Fuller sign a "background check application form" provided by ABG which gave Defendants permission, among other things, to obtain a background consumer report about Plaintiff from Sterling.

50.     Upon information and belief, the background check application form that Defendants provided to Ms. Fuller violated section 1681b(b)(2) of the FCRA because it did not

consist "solely of the disclosure that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i).  *See Avila v. NOW Health Group, Inc*., 2014 WL 3537825, at *2-3 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corp.*, 2013 WL 6231606, at *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Milbourne v. JRK Residential Amer., LLC*, No. 12-861, 2015 WL 1120284, at *17 (E.D. Va. Mar. 11, 2015) ("As explained above, the plain language of the statute imposes two requirements:  (1) that the 'clear and conspicuous disclosure' be made 'in writing,' and (2) that it be made 'in a document that consists solely of the disclosure.'").

51.     Ms. Fuller moved out of her Tennessee apartment in mid-July 2013, and rented a room to live in Pensacola in order to begin work at her new job at ABG.

52.     Though ABG informed her they would confirm the results of her background check and drug test before she would start working, she still had not heard from anyone by mid-July and called the district office on or about July 16, 2013.  She spoke with "Paul," the District Manager, who said there was no one in the office so he would have to call her back.

53.     On or about July 17, 2013, ABG's district manager returned Ms. Fuller's call and advised that they were still waiting for the results of her background check.  He informed her not to call back, that someone from ABG would call her.

54.     Anxious to start her new job, Ms. Fuller placed a few additional calls to follow-up and to ascertain when she could begin working at ABG.  No one could provide an answer, and she was informed to wait to hear.

55.     Upon information and belief, sometime between July 5 and 19, 2013, ABG received a background consumer report from Sterling concerning Ms. Fuller which flagged one area as "**Alert**" instead of "Clear."

56.     The background report provided by Sterling to ABG reported a Durham County, North Carolina "Conviction" from 1985 for "consum[ing] malt beverage in passenger area," which resulted in a $40 fine.

57.     This allegedly criminal record history reported by Sterling to Defendant was inaccurate and/or misleading.  In the State of North Carolina "consuming an alcoholic beverage, in the passenger area of a motor vehicle while the motor vehicle is on a highway or the right-of-way of a highway" is "an infraction."   N.C.G.S. §§ 20-138.7(a1) and (e).   Infractions are "noncriminal violation(s)" punishable by a fines not over $100.  N.C.G.S. § 14-3.1(a).  Indeed, the 30-year old infraction at issue (from when Plaintiff was a college student at Duke University) carried a fine of $40.

58.     Under the FCRA, adverse information, other than records of conviction of a crime, cannot be reported more than 7 years after the date of the adverse information.   15 U.S.C. § 1681c(a)(5).

59.     On or about July 23, 2013, Ms. Fuller received a call from ABG's district manager where he interrogated her, asking that she "come clean" because "something has come back in [her] background check that is unacceptable."  Ms. Fuller was in shock, and asked for information about what it was.  After being asked again to "think hard and come clean," ABG's district manager told her to think "way, way, way back… try 1985."  Ms. Fuller was a sophomore at Duke University then during the school year, and lived at home in Tennessee during the summer.  She did not know what report ABG's district manager was viewing or what it said about her.

60.     After her conversation with ABG's district manager, Ms. Fuller understood that she would not start working as a rental sales associate.  She also never received a call back from him.

61.     On or about July 27, 2013, ABG emailed Ms. Fuller to advise that "we have decided to pursue other candidates whose expectations and qualifications more closely match the position requirements."  A true and correct copy of the July 27 email is attached hereto as Exhibit B.

62.     As a result of the Sterling report, Defendant did not hire Ms. Fuller or let her begin the job that it had offered Ms. Fuller and which she had accepted.

63.     At no point prior to July 27, 2013, did ABG provide Ms. Fuller with a pre-adverse action notice or a copy of her Sterling report or a statement of FCRA rights as required by FCRA section 1681b(b)(3).

64.     If ABG had provided Ms. Fuller with proper pre-adverse action notice and copy of the Sterling report and statement of FCRA rights, she would have had an opportunity to dispute to Sterling that the 30-year-old infraction should have aged off the report after seven years pursuant to 15 U.S.C. § 1681c(a)(5).

65.     In late July 2013, Ms. Fuller continued to try to reach ABG to request additional information and follow-up with the district manager. Her messages were not returned.  On or about July 30, 2013, she spoke with a supervisor at ABG's national recruiting line who advised that there was nothing they could do to help her, except to try to reach out to the Pensacola airport location. Ms. Fuller never received a return call from anyone at ABG.

66.     On or about August 8, 2013, ABG sent a letter to Ms. Fuller by regular mail, which Plaintiff did not receive until several days later.

67.     The August 8 letter stated *inter alia*, "ABG – PENSACOLA contracted with Sterling Infosystems" for a background report on her to be used for employment purposes.  It

continued, "[i]f the accuracy of the information contained in your background report is not successfully challenged, it may result in the revocation of your conditional offer of employment." A true and correct copy of the August 8 letter is attached hereto as <u>Exhibit C</u>.

68.    By the time the August 8 letter was received by Ms. Fuller she was already denied the job at ABG's Pensacola airport location based upon the consumer report ABG obtained from Sterling.

69.    The negative scoring of Ms. Fuller's application occurred prior to anyone notifying her in writing of that fact and prior to anyone providing her with a copy of the report or any meaningful opportunity to dispute it.  In doing so, ABG failed to comply with the FCRA's pre-adverse action notification requirements.

70.    On or about August 15, 2013, ABG mailed another letter to Ms. Fuller confirming she was no longer being considered for employment and that the decision "was influenced by information contained in a consumer report" from Sterling.  A true and correct copy of the August 15th letter is attached hereto as <u>Exhibit D</u>.

71.    Upon information and belief, the August 8 and August 15 pre-adverse action and adverse action notices ABG sent to Ms. Fuller are forms that Sterling makes available to its customers.

72.    As a direct result of Defendants' unlawful adoption and use of Sterling's disclosure form, background report and scoring of the application, Ms. Fuller lost the job opportunity at ABG and suffered actual damages, including moving expenses, wages and other pecuniary loss, humiliation, embarrassment and emotional distress.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Classes:

(a)     FCRA Section 1681b(b)(2) Class: All natural persons residing within the United States and its Territories regarding whom, within five years prior to the filing of this action and extending through the resolution of this action, the Defendants procured or caused to be procured a consumer report for employment purposes using a written disclosure containing language substantially similar in form to the Sterling-prepared Disclosure Form provided to Ms. Fuller.

(b)     FCRA Section 1681b(b)(3) Class: All employees or applicants for employment with Defendants residing in the United States and its Territories who were the subject of a background report procured or caused by the procured from Sterling or any other consumer reporting agency that Defendants used to make an adverse employment decision regarding such employee or applicant for employment, within five years prior to the filing of this action and extending through the resolution of this action, and for whom Defendants failed to provide the employee or applicant a copy of his or her consumer report or a copy of the FCRA summary of rights before it took such adverse action.

1.     Pre-Adjudication Subclass: All employees or applicants for employment with Defendants residing in the United States and its Territories who were the subject of a background report procured or caused to be procured from Sterling, which contained one or more area of the report adjudicated as "**Alert**" instead of "Clear," within five years prior to the filing of this action and extending through the resolution of this action.

2.     Letter Sequence Subclass: All employees or applicants for employment with Defendants residing in the United States and its Territories who were the subject of a background report procured or caused to be procured from Sterling or any other consumer reporting agency that Defendants used to make an adverse employment

decision regarding such employee or applicant for employment, within five years prior to the filing of this action and extending through the resolution of this action, and to whom Defendants sent notification that they were moving onto other candidates in the substantially equivalent form of the July 27, 2013 letter Defendants sent to Plaintiff, and who subsequently received a purported pre-adverse action letter from ABG in the substantially equivalent from of the August 8, 2013 letter Defendants sent to Plaintiff.

74.    Plaintiff reserves the right to amend the definition of the Classes based on discovery or legal developments.

75.    **Numerosity**.  **FED. R. CIV. P. 23(a)(1)**.  The Class members are so numerous that joinder of all is impractical.  Upon information and belief, Defendants obtain signed standardized background check application forms for background reports and procure and use hundreds if not thousands of consumer reports on applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Defendants.

76.    **Existence and Predominance of Common Questions of Law and Fact**.  **FED. R. CIV. P. 23(a)(2)**.  Common questions of law and fact exist as to all Class members, and predominate over the questions affecting only individual members.  The common legal and factual questions include, among others:

(a)    Whether Defendants procured or caused to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

(b)    Whether Defendants failed to provide each employee or applicant for employment a copy of his or her consumer report before Defendants took adverse action based upon a disqualifying or adversely scored consumer report;

(c)    Whether Defendants failed to provide each applicant for employment a

copy of his or her written notice of FCRA rights before Defendants took adverse action based upon the consumer report; and

(d)      Whether Defendants acted willfully or negligently in disregard of the FCRA in the substantially equivalent from rights of employees and employee applicants in their failure to permit their employees and automated systems to send an employee or applicant his or her full consumer report and a written statement of FCRA rights before taking adverse action based on the consumer report.

77.      **Typicality**.  **FED. R. CIV. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory, actual and punitive damages that she seeks for absent Class members.

78.      **Adequacy**.  **FED. R. CIV. P. 23(a)(4)**.  Plaintiff is an adequate representative of the Classes.  Her interests are aligned with, and are not antagonistic to, the interests of the Class members she seeks to represent.  She has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously.  Plaintiff and her counsel will fairly and adequately protect the Class members' interests.

79.      **Predominance and Superiority**.  **FED. R. CIV. P. 23(b)(3)**.  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory, actual and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for the Class members, individually, to redress effectively the wrongs done to them.  Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the

courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

**CAUSES OF ACTION**

**COUNT I**
**Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)**
**(On behalf of Plaintiff and Class)**

80.      Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

81.      Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

82.      Defendants are each a "person" as defined by the FCRA, 15 U.S.C. § 1681a(b).

83.      The Sterling background reports ordered by Defendants are "consumer reports" used for "employment purposes" within the meaning of 15 U.S.C. §§ 1681a(d) and 1681a(h).

84.      Defendants are liable for willfully and negligently violating section 1681b(b)(2) of the FCRA by procuring or causing to be procured a consumer report for employment purposes without first providing a clear and conspicuous disclosure in writing to the consumer in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

85.      Defendants' actions cause harm to job applicants such as Plaintiff as more fully described above.

**COUNT II**
**Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(3)**
<u>**(On behalf of Plaintiff and the Class)**</u>

86.     Plaintiff realleges and incorporates by reference all preceding paragraphs as alleged above.

87.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer with a copy of the report *and* a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action.  15 U.S.C. § 1681b(b)(3)(A).

88.     For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii).

89.     Defendants are each a "person" that regularly uses Sterling background reports for employment purposes.

90.     The FCRA requires Defendants, as users of consumer reports for employment purposes, to provide notice and certain documents to the applicant before taking adverse action based in whole or in part on the report.  Those mandatory disclosures include a copy of the consumer's report and a written description of the consumer's rights under the FCRA.  15 U.S.C. §§ 1681b(b)(3)(A)(i), (ii).

91.     Defendants are liable for willfully and negligently violating section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Classes the following before taking adverse action based in whole or in part upon the report:  (a) the required Pre-Adverse Action Notice; (b) a copy of the consumer report; and, (c) a written description of the consumer's

rights under the FCRA, and thereby denied the consumers sufficient time to be able to review and dispute the report before Defendants took adverse action.

92.     Defendants' actions cause harm to job applicants such as Plaintiff as more fully described above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Classes pray for relief as follows:

A.     An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of statutory, actual and punitive damages for Plaintiff and the Classes;

C.     An award of attorneys' fees and costs; and,

D.     Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests and demands a trial by jury.

## DESIGNATION OF TRIAL COUNSEL

Plaintiff hereby designates John Soumilas as trial counsel in the above-captioned matter. Plaintiff reserves the right to amend this designation as necessary.

## ARBITRATION CERTIFICATION

I, John Soumilas, counsel of record do hereby certify pursuant to Local Civil Rule 201.1(d) that relief other than monetary damages is sought and that the damages sought are in excess of $150,000.  I further certify that, to my knowledge, the within case is not the subject of any action, arbitration or administrative hearing now pending in any court.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  June 9, 2015           BY:      */s/ John Soumilas*
                                      JOHN SOUMILAS
                                      JAMES A. FRANCIS
                                      LAUREN KW BRENNAN
                                      100 South Broad Street, 19th Floor
                                      Philadelphia, PA 19110
                                      T: 215-735-8600
                                      F: 215-940-8000
                                      E: jfrancis@consumerlawfirm.com
                                      E: jsoumilas@consumerlawfirm.com
                                      E: lbrennan@consumerlawfirm.com

                                      Micah S. Adkins (*pro hac vice forthcoming*)
                                      **The Adkins Firm, P.C.**
                                      The Kress Building
                                      301 19th Street North, Suite 581
                                      Birmingham, AL 35203
                                      T: 205-458-1204
                                      F: 205-208-9632
                                      E: MicahAdkins@ItsYourCreditReport.com

                                      Robert S. Sola (*pro hac vice forthcoming*)
                                      **Robert S. Sola, P.C.**
                                      8835 S.W. Canyon Lane, Suite 130
                                      Portland, OR  97225
                                      T: 503-295-6880
                                      F: 503-291-9172
                                      E: rssola@msn.com

                                      *Attorneys for Plaintiff*